**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-1464**

———————

FREIGHT DRIVERS AND HELPERS LOCAL UNION NO. 557 PENSION
FUND,

        Plaintiff - Appellant,

    v.

PENSKE LOGISTICS LLC; PENSKE TRUCK LEASING CO., L.P.,

        Defendants – Appellees.

———————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Ellen L. Hollander, District Judge.
(1:12-cv-02376-ELH)

———————

Argued:  January 27, 2015        Decided:  April 21, 2015

———————

Before NIEMEYER, THACKER, and HARRIS, Circuit Judges.

———————

Reversed and remanded by published opinion.  Judge Niemeyer
wrote the opinion, in which Judge Thacker and Judge Harris
joined.

———————

**ARGUED:** Corey Smith Bott, ABATO, RUBENSTEIN & ABATO, PA,
Baltimore, Maryland, for Appellant.  David R. Levin, DRINKER
BIDDLE & REATH LLP, Washington, D.C., for Appellees.  **ON BRIEF:**
Paul D. Starr, ABATO, RUBENSTEIN & ABATO, PA, Baltimore,
Maryland, for Appellant.  Brian A. Coleman, Washington, D.C.,
Mark E. Furlane, DRINKER BIDDLE & REATH LLP, Chicago, Illinois,
for Appellees.

———————

NIEMEYER, Circuit Judge:

This appeal raises the question of how a party to an arbitration proceeding under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub. L. No. 96-364, 94 Stat. 1208 (codified as amended in scattered sections of 26 and 29 U.S.C.), can obtain review of the arbitration order, as provided in 29 U.S.C. § 1401(b)(2). Specifically, we must determine whether § 1401(b)(2) and § 1451 require the dissatisfied party to commence a civil action in a district court by filing a complaint, or whether § 1401(b)(3) requires the dissatisfied party to file an application for review of the arbitration order by filing a motion, as provided in the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. The distinction between the two procedures is critical to the outcome of this appeal.

Freight Drivers and Helpers Local Union No. 557 Pension Fund (the "Pension Fund"), a multiemployer pension plan, commenced this action under § 1401(b)(2) by filing a complaint. The Pension Fund seeks to vacate or modify an arbitration order, entered pursuant to § 1401(a)(1), which rejected the Pension Fund's assessment of withdrawal liability with respect to two participating employers. When the district court granted the participating employers' motion to dismiss with leave to file an amended complaint, the Pension Fund filed an amended complaint,

2

which, it argued, related back to the filing date of the original complaint under Federal Rule of Civil Procedure 15(c). Thereafter, however, the district court granted the employers' second motion to dismiss, ruling that the Pension Fund could challenge the arbitration award only by filing a motion to vacate or modify, as provided under the FAA, 9 U.S.C. § 6 (providing that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions"). The court thereupon treated the Pension Fund's amended complaint as a motion and dismissed it, concluding that it was untimely under § 1401(b)(2) because, unlike an amended complaint, a motion cannot "relate back" under Rule 15. In addition, because the court treated the amended complaint as a motion, it found the motion deficient under District of Maryland Local Rule 105, which requires a motion to be supported by a memorandum setting forth the reasoning and authorities for the motion.

On appeal, we conclude that commencing an action by filing a complaint is the appropriate procedure for seeking review of an arbitration award entered pursuant to § 1401(a) and that the amended complaint in this case related back to the filing date of the original complaint, thus rendering it timely.

3

Accordingly, we reverse the district court's order of dismissal and remand for further proceedings as a civil action.[*]

I

During the period from 2001 to 2004, Penske Truck Leasing Co., L.P., engaged in several transactions by which it ultimately transferred ownership of its subsidiary, Leaseway Motorcar Transport Company, to a third party, in which Penske Truck Leasing apparently retained a minority ownership interest. As a result of the restructuring, Penske Truck Leasing took the position that it and Leaseway were no longer under "common control," as that term is used in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1301(b)(1). Thereafter, Leaseway ceased making contributions to the Pension Fund, and the Fund responded by assessing withdrawal liability against Penske Truck Leasing and the Penske Logistics Group LLC, an affiliated company, (collectively the "Penske companies"). When neither Penske Truck Leasing nor Penske Logistics satisfied the Pension Fund's requests for withdrawal liability, the

_____

[*] With respect to pending cases, in which the party seeking review of an MPPAA arbitration order under § 1401(b) filed a motion, as provided by the FAA, 9 U.S.C. § 6, we encourage district courts to be flexible in allowing the party to bring its process in compliance with our decision today, subject to considerations of prejudice and equity.

4

parties submitted the dispute to arbitration, as mandated by § 1401(a)(1).

The parties to the arbitration proceeding were "Penske Logistics LLC [and] Penske Truck Leasing Co., L.P.," on the one side and "Freight Drivers & Helpers Local Union No. 557 Pension Fund" on the other, and the arbitrator never suggested that the parties to the proceeding were not the appropriate parties. The arbitrator dismissed the Pension Fund's claim for the imposition of withdrawal liability in an order dated July 13, 2012, concluding that the Penske companies were not liable for withdrawal payments because the Pension Fund was exempt as "a trucking industry fund as that term is described in [29 U.S.C. § 1383(d)]."

The Pension Fund, as the dissatisfied party to the arbitration proceeding, commenced this action on August 9, 2012, to vacate or modify the arbitrator's order, alleging that the arbitrator erred as a matter of law in applying the trucking industry exemption. The Pension Fund captioned its complaint "Freight Drivers and Helpers Local Union No. 557 Pension Fund, by its Trustee, William Alexander," versus "Penske Logistics LLC [and] Penske Truck Leasing Co., L.P."

The Penske companies filed a motion to dismiss the complaint, arguing that because the Pension Fund sued "by its Trustee, William Alexander," instead of by its Joint Board of

5

Trustees (consisting of four trustees), the Pension Fund did not have standing to sue under § 1401(b)(2). The district court granted the motion and gave the Pension Fund 21 days within which to file an amended complaint to correct the deficiency.

It is significant that in reaching its decision, the district court analyzed the MPPAA's procedures for judicial review of an arbitration award as requiring the commencement of a civil action. Explaining the procedures, the court stated that "[j]udicial review of the arbitrator's decision is available to 'any party thereto,'" as indicated by the title to § 1401(b)(2), by filing a "'civil action subsequent to arbitration award.'" (Quoting § 1401(b)(2)). The court summarized, "As indicated, an action under 29 U.S.C. § 1401(b)(2) must be brought 'in accordance with' 29 U.S.C. § 1451, titled 'Civil actions.'" Further on in its analysis, the court applied the rules applicable to complaints, indicating that a court may "consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." (Quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)). In determining who the proper party plaintiff would be in any such action, the court explained the relationship between § 1401(b)(2) and § 1451. It stated, "[Section 1451] pertains to the manner in which the § 1401(b)(2) action is initiated, i.e.,

6

the how. In other words, § 1401(b)(2) incorporates the procedural requirements set forth in § 1451, such as the provisions governing venue and service of process. See id. § 1451(d), (g)." Reiterating the policy for such a civil action, as described in Board of Trustees, Sheet Metal Workers' National Pension Fund v. BES Services, Inc., 469 F.3d 369, 373-74 (4th Cir. 2006), the district court related how Congress intended to adopt a stream-lined process that required "arbitration, with judicial review." (Emphasis added). The Court stated in conclusion, "For the foregoing reasons, I will grant defendants' Motion to Dismiss, without prejudice, and with leave to amend. Specifically, plaintiff may amend the Complaint provided that the Board of Trustees file[] suit on behalf of the Fund." (Emphasis added). The court gave the Pension Fund 21 days within which to file its amended complaint.

As authorized by the district court, the Pension Fund filed its amended complaint within 21 days, naming as plaintiff "Freight Drivers and Helpers Local Union No. 557 Pension Fund, by its Plan Sponsor, The Joint Board of Trustees."

The Penske companies again filed a motion to dismiss the amended complaint, this time arguing that a party challenging an MPPAA arbitration order must do so by filing a motion in accordance with the FAA, rather than by filing a complaint. They argued further that if the district court were to treat the

7

amended complaint as a motion, the motion would be untimely because it was not filed within 30 days of the arbitration award and would be deficient for failing to comply with Local Rule 105, which requires an accompanying memorandum of "reasoning and authorities."

The district court again granted the Penske companies' motion to dismiss by order dated February 7, 2014, and thus it ended the litigation. In doing so, the district court concluded first that the Penske companies were correct that a party challenging an MPPAA arbitration award must do so by filing a motion, as required by the FAA, because, as they claimed, such a procedure was required by § 1401(b)(3). The court stated:

> [Section 1401(b)(3)] plainly provides that arbitration proceedings under ERISA should be conducted in accordance with the procedures set forth in the FAA, and the FAA plainly provides that a party seeking to vacate an arbitration award must proceed by motion.

*      *      *

> As a result, plaintiff's "Amended Complaint" is an improper filing.

The court declined, however, to elevate form over substance and therefore treated the Pension Fund's amended complaint as a motion to vacate. But in doing so, it noted that a motion, unlike a complaint, could not relate back under Federal Rule of Civil Procedure 15(c), therefore rendering the motion untimely. Moreover, in treating the amended complaint as a motion, the court also concluded that the motion should have been

8

"accompanied by a memorandum setting forth the reasoning and authorities in support of it," as required by Local Rule 105.

After the district court denied its motion for reconsideration, the Pension Fund filed this appeal, challenging the district court's gateway procedural ruling that a party seeking review of an MPPAA arbitration order must do so by filing a motion, as provided in the FAA.

## II

The Pension Fund contends that the district court erred in rejecting its filing of a complaint as the proper method by which to obtain review of an MPPAA arbitration order. It argues that 29 U.S.C. §§ 1401(b)(2) and 1451 "evince that the mechanism through which to bring an action [to vacate or modify an arbitration award] is by filing a complaint."

The Penske companies contend, to the contrary, that "the sole method to challenge an arbitration award . . . is by filing a motion, so the 'Amended Complaint' is not a proper method for the [Pension Fund] to challenge the arbitration award." They rely on § 1401(b)(3), which provides that "[a]ny arbitration proceedings under this section shall, to the extent consistent with this subchapter, be conducted in the same manner, subject to the same limitations, carried out with the same powers . . .

9

and enforced in United States courts as an arbitration proceeding carried out under [the FAA]."

The difference in the parties' positions thus presents the narrow procedural question of whether a party who seeks to vacate or modify an arbitration award under the MPPAA (1) must commence an action by filing a complaint or (2) must file an application by motion under the FAA. We conclude that the MPPAA requires the former.

The MPPAA provides that after mandatory arbitration proceedings have been conducted pursuant to § 1401(a), a party to the arbitration proceeding "may bring an action . . . in an appropriate United States district court . . . to enforce, vacate, or modify the arbitrator's award." § 1401(b)(2) (emphasis added). It also provides that the action must be brought "in accordance with section 1451 of this title," id., which, in turn, requires that "the complaint in any action under . . . section 1401 of this title shall be served upon the [Pension Benefit Guaranty Corporation] by certified mail," id. § 1451(g) (emphasis added). The plain meaning of these provisions can only lead to the conclusion that a party seeking review of an MPPAA arbitration award must do so by commencing a civil action in a district court by filing a complaint to vacate or modify the award. While the titles of § 1401(b) and § 1451, explicitly referring to such review as a "civil action," are not

10

part of the substantive text, the text in no uncertain terms refers to a civil action, using the terms "an action" in a "district court" with respect to which the "complaint" must be served on the Pension Benefit Guaranty Corporation. Indeed, this is the language of most federal statutes providing for civil actions in a district court.

This reading is confirmed by the statute's identical provision for a civil action to collect withdrawal liability payments where no arbitration is involved. Section 1401(b)(1) provides that "[i]f no arbitration proceeding has been initiated . . . , the amounts demanded [for withdrawal liability] shall be due and owing" and the Plan's sponsor "may bring an action . . . for collection." (Emphasis added). The parties agree that this provision authorizes collection by means of a civil action commenced by the filing of a complaint in court. They can hardly deny that the exact same language used in § 1401(b)(2) likewise authorizes review of an arbitration award by means of a civil action commenced by the filing of a complaint in court. See United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 213 (2001) (noting the general presumption that "identical words used in different parts of the same act are intended to have the same meaning" (quoting Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932)).

11

Finally, it is no accident that the MPPAA uses the terms of art "an action," "civil action," "in a district court," and "complaint," which are precisely those used by the Federal Rules of Civil Procedure governing civil actions in district courts. Rule 2 provides that "[t]here is one form of action -- the civil action," and Rule 3 provides that "[a] civil action is commenced by filing a complaint with the [district] court." Fed. R. Civ. P. 2, 3 (emphasis added).

Moreover, the House Committee Report explaining the MPPAA leaves little doubt that judicial review authorized by § 1401(b)(2) refers to review by a civil action commenced by the filing of a complaint. In describing enforcement of arbitration awards under the MPPAA by a "civil action," the Report states:

> In general, the district courts of the United States have exclusive jurisdiction for civil actions under the bill without regard to the amount in controversy. In the case of an action brought by a plan fiduciary to collect withdrawal liability, State courts of competent authority are also to have jurisdiction.
>
> *   *   *
>
> In addition, a copy of the complaint in any action brought under the bill is to be served on the PBGC by certified mail. The PBGC may intervene in any action brought under the bill.
>
> In the case of an action under the bill, the court is permitted to award to the prevailing party all or a portion of costs and expenses in connection with the action, including reasonable attorneys fees.
>
> The period of limitations for the commencement of an action under the bill is to expire six years after the date on which the cause of action arose.

12

H.R. Rep. No. 96-869, pt. 2, at 42 (1980), reprinted in 1980 U.S.C.C.A.N. 2993, 3032.

The Penske companies rely exclusively on § 1401(b)(3) in support of their position. That provision incorporates generally the FAA procedures for "[a]ny arbitration proceedings" under the MPPAA, which, they argue, includes the FAA's procedures for review of arbitration awards. See 9 U.S.C. § 6.

First, we note that if there were any tension between subsection (b)(3) (providing for use of FAA procedures for arbitration proceedings) and subsection (b)(2) (providing for civil actions to review arbitration awards), subsection (b)(3) requires that subsection (b)(2) govern, as subsection (b)(3) expressly limits applicability of the FAA "to the extent consistent with this subchapter." § 1401(b)(3). But when the overall structure of the statute is considered and the statute is properly construed, there appears to be no such tension. Subsection (a)(1) requires that disputes over withdrawal liability be submitted to arbitration; subsection (b)(3) requires that the "arbitration proceedings" be conducted in accordance with the procedures set forth in the FAA; and subsection (b)(2) and § 1451(g) require that review of arbitration awards be pursued by bringing a civil action in district court by filing a complaint and serving a copy on the Pension Benefit Guaranty Corporation. Thus, the mechanisms for

13

conducting arbitration proceedings are provided by the FAA and the mechanisms for review of those proceedings are provided by the MPPAA and the rules governing civil actions in district courts, beginning with the commencement of a civil action by the filing of a complaint.

The conclusion that the MPPAA distinguishes procedures for arbitration proceedings from procedures for judicial review is further indicated by the scope of regulations promulgated by the Pension Benefit Guaranty Corporation regarding "Arbitration of Disputes in Multiemployer Plans," 29 C.F.R. pt. 4221. The stated purpose of those regulations is to "establish procedures for arbitration, pursuant to [§ 1401], of withdrawal liability disputes." Id. § 4221.1. And in providing the procedures for arbitration proceedings under the MPPAA, the regulations limit their scope "to arbitration proceedings initiated pursuant to [§ 1401]" and then "only to the extent that they are consistent with this part and adopted by the arbitrator in a particular proceeding." Id. The regulations provide procedures for every stage of such an arbitration proceeding from its "initiation" to the "award," id. §§ 4221.3-4221.8, but they provide no procedure for review of an award except the arbitrator's "reconsideration of [an] award," id. § 4221.9. The absence of regulations pertaining to judicial review speaks volumes about the scope of § 1401(b)(3)'s reference to the FAA.

14

It is therefore not surprising that in MPPAA arbitration cases, we have noted that the MPPAA "clear[ly] authoriz[es] . . . judicial review . . . [of] the arbitrator's legal rulings," Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund, 718 F.2d 628, 641 (4th Cir. 1983) (emphasis added), and that the judicial review authorized by § 1401(b)(2) is much more expansive than the narrow review authorized by the FAA, see id. (noting that the FAA "prohibits judicial review of legal or factual disputes voluntarily submitted to an arbitrator").  While the MPPAA does restrict to some degree judicial review of an arbitrator's factual findings, see § 1401(c) (creating a presumption of correctness of the arbitrator's findings of fact), it provides de novo judicial review of the arbitrator's legal conclusions, see Trustees of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs v. Wolf Crane Serv., Inc., 374 F.3d 1035, 1038 (11th Cir. 2004) (noting that "the appropriate standard of review is clear error for findings of fact [made by the arbitrator] and de novo for conclusions of law" and collecting cases of the different courts of appeals so holding, including our decision in Republic Industries).  Indeed, we explained the overall structure of the MPPAA in BES Services, where we described precisely the dichotomy of procedures -- FAA

15

procedures for arbitration proceedings and judicial review by court proceedings in a district court:

> Congress did not intend to create a new, broad category of litigation that would force benefit plans to spend their assets on court costs and attorneys fees. Rather, it chose to require arbitration, with judicial review, to create a more efficient dispute-resolution process.

* * *

> Thus, when there is a dispute concerning the determination of withdrawal liability, the dispute, whether over law, facts, or both, is committed <u>in the first instance to arbitration</u>. And that arbitration proceeding is conducted as any arbitration would be conducted under the Federal Arbitration Act.

> But unlike the Federal Arbitration Act, the MPPAA treats an award issuing from such a § 1401 arbitration like an agency determination -- the arbitrator decides the issues in the first instance <u>but then the decision is subject to judicial review</u>.

* * *

> Thus, if a party <u>commences an action in federal court</u> without having first exhausted the mandatory arbitration process, it will be subject to a failure-to-exhaust defense.

469 F.3d at 374-75 (emphasis added) (citation omitted).

In sum, a party seeking to vacate or modify an arbitrator's award under § 1401(b)(2) must commence an action in a district court by filing a complaint and pursuing that action thereafter in accordance with the Federal Rules of Civil Procedure.

16

III

The distinction between a civil action commenced by the filing of a complaint to vacate an arbitration award and an application to vacate an award by means of a motion is critical in this case.

The arbitrator's award was entered on July 13, 2012, and the Pension Fund commenced this action to challenge the award within 30 days, as required by § 1401(b)(2), by filing a complaint in the district court on August 9, 2012. When the district court granted the Penske companies' motion to dismiss for lack of standing, it granted the Pension Fund leave to file an amended complaint within 21 days, and the Pension Fund complied with that order, filing an amended complaint on August 7, 2013. Because that date was far beyond the 30 days specified by § 1401(b)(2), however, the amended complaint would be timely only if it related back to the filing date of the original complaint, pursuant to Federal Rule of Civil Procedure 15(c).

The district court did not address whether the Pension Fund's amended complaint, properly viewed as such, related back; rather, it concluded that the amended complaint should be treated as a motion and that a motion "cannot 'relate back' under Federal Rule of Civil Procedure 15." Thus, in treating the Pension Fund's amended complaint as a motion, the district

17

court created the conditions for the court's order of dismissal. First, it dismissed the motion as untimely; and second, it found the motion deficient because it was not accompanied by a memorandum setting forth the "reasoning and authorities" for the motion, as required by Local Rule 105.

Inasmuch as we find that the Pension Fund's filing of a complaint was indeed the appropriate procedure by which to challenge the arbitration award under § 1401(b)(2), we are left to determine only whether the Pension Fund's amended complaint related back to the filing date of the original complaint. Because the factual circumstances relevant to resolving this question are not disputed and the relation-back question is purely legal, we decide it here. See Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 544 n.* (4th Cir. 2005) ("Although the district court did not address these arguments, a remand to address these arguments is unnecessary because the arguments raise purely legal questions based on facts not in dispute").

Federal Rule of Civil Procedure 15 provides in pertinent part:

> An amendment to a pleading relates back to the date of
> the original pleading when . . . the amendment asserts
> a claim or defense that arose out of the conduct,
> transaction, or occurrence set out -- or attempted to
> be set out -- in the original pleading.

Fed. R. Civ. P. 15(c)(1)(B).  Even with the addition of new parties, the Rule allows the relation back of amendments so long

18

as the parties have notice of the particular conduct, transaction, or occurrence at issue. See 6A Charles Alan Wright et al., Federal Practice & Procedure § 1498 (3d ed. 2010 & Supp. 2014).

In this case, the original complaint was brought in the name of the Pension Fund, by one of its trustees, challenging the July 13 arbitrator's award, to which the Pension Fund and the Penske companies had been the only parties. As with the original complaint, the amended complaint was again brought in the name of the Pension Fund, but this time by its Board of Trustees, comprised of four members. And it again challenged the same July 13 arbitration award. In short, the Pension Fund as the named party remained the same; the conduct challenged remained the same; and the cause of action remained the same. The only change effectuated by the amended complaint was to note that the Pension Fund was suing through all four trustees instead of only one.

Because the substantive allegations in the amended complaint were identical to those contained in the initial complaint, the requirements of relation back under Rule 15(c) clearly apply. See Wilkins v. Montgomery, 751 F.3d 214, 225 (4th Cir. 2014) ("The proposed amended complaint in this case clearly meets the . . . requirement of . . . Rule 15(c)(1)(B) . . . because it [does not] alter the underlying causes of

19

action"). Moreover, the Penske companies have identified no prejudice nor have they identified any information or fact that they did not know as of the filing date of the original complaint. Indeed, the Penske companies' counsel conceded at oral argument that there was "absolutely no doubt" that the initial complaint placed the Penske companies on notice of the claims leveled against them by the Pension Fund.

The Penske companies argue that the second filing was not really an "amended" complaint at all, but rather the initial complaint of the only party to have statutory standing to bring the suit, the Joint Board of Trustees. They reason therefore that the second filing commenced an entirely new action that could not "relate back" to anything. This argument is hyper-technical, carrying no equitable or pragmatic weight. Moreover, it is inconsistent with the circumstances acted on by the district court and with the conduct of the parties. The court stated that "[the] plaintiff" -- identified in the caption of the court's order as the Pension Fund -- "may amend the Complaint provided that the Board of Trustees file[] suit on behalf of the Fund." And, in amending its complaint, the Pension Fund did exactly what the district court instructed it to do, changing nothing except the reference to the Pension Fund's trustees.

Further, as the Advisory Committee Notes to Rule 15(c) observe, the Rule does not expressly treat the relation back of an amended complaint that changes plaintiffs. Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment; see also In re Cmty. Bank of N. Va., 622 F.3d 275, 297 (3d Cir. 2010) (explaining that Rule 15(c) does not expressly contemplate "amendments changing plaintiffs" because "th[at] problem is generally easier [than that of amendments changing defendants]" (second alteration in original) (quoting Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment)). Thus, the amendment at issue does not technically implicate the "chief consideration of policy" of Rule 15(c). See id. (quoting Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment); cf. Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 618 (4th Cir. 2001) ("[A] court determining whether to grant a motion to amend to join additional plaintiffs must consider . . . the general principles of amendment provided by Rule 15(a) . . . ." (emphasis added)). As explained by Professors Wright and Miller:

> As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, defendant's ability to protect itself will not be prejudicially affected if a new plaintiff is added, and defendant should not be permitted to invoke a limitations defense. This seems particularly sound inasmuch as the courts will require the scope of the amended pleading to stay within the ambit of the conduct, transaction, or occurrence set forth in the original pleading.

21

6A Wright et al., <u>supra</u>, § 1501 (emphasis added) (footnote omitted).  The important fact remains that the amended complaint concerns the same conduct, transaction, or occurrence set forth in the original pleading.

We conclude, therefore, that the Pension Fund's amended complaint relates back to the filing date of the original complaint under Federal Rule of Civil Procedure 15(c).

\* \* \*

For the reasons given, we reverse and remand for further proceedings as a civil action.

<u>REVERSED AND REMANDED</u>